**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**

**CASE NO. 17-61756-CIV-COOKE/GOODMAN**

RICARDO JORGE OLGUIN,

      Plaintiff,

v.

FLORIDA'S ULTIMATE HEAVY HAULING,
et al.,

      Defendants.

_____/

## REPORT AND RECOMMENDATIONS ON COMPETING FEES MOTIONS

At bottom, litigation is war. Framed by this fundamental view, this Report and Recommendations on competing attorney's fees motions will begin with four war-related maxims from Sun Tzu (544 – 496, BC), the famous Chinese general and military strategist credited with writing The Art of War: (1) "The greatest victory is that which requires no battle"; (2) "The supreme art of war is to subdue the enemy without fighting"; (3) "He will win who knows when to fight and when not to fight"; and (4) "He who wishes to fight must first count the cost."

As outlined below, this lawsuit (which quickly morphed from an extremely small claim worthy of a telephone call into a full-fledged litigation war) should never have been a lawsuit in the first place. But, once filed, this lawsuit should have been quickly and inexpensively resolved. It wasn't. Indeed, what should have been, at *most*, a

modest, manageable, garden-variety squabble under the Fair Labor Standards Act involving a claim of less than $1,000 and a settlement of $783 (and which likely could have been resolved with a single telephone call or email, without the filing of a lawsuit) mushroomed into a full-scale, pedal-to-the-metal litigation war and an epic battle over attorney's fees. In other words, the war-avoidance wisdom of Sun Tzu was not followed.

As a consequence of this avoidable litigation war, Plaintiff Ricardo Jorge Olguin seeks $36,575 in fees and Defendants seek $60,530 in fees -- but those amounts have already increased significantly because each fees motion triggered a response and a reply. In fact, Plaintiff's counsel has advised that he will prepare a supplemental fees and costs motion to address the post-motion legal activity "at the appropriate time" [ECF No. 86, p. 15], and defense counsel has "reserved their right to seek fees incurred in litigating fees" and "to seek such fees by way of a supplemental motion filed at an appropriate time." [ECF No. 102, p. 10].

So the Court is confronted with competing attorney's fees requests of approximately $100,000 (and still climbing higher) in a case which settled for less than eight hundred dollars.

Defendants contend that Plaintiff's counsel "filed and pursued a minimum wage claim initially valued at $590 but later re-valued at $783 (inclusive of liquidated damages) without any pre-suit investigation or effort to resolve the claim." [ECF No. 91,

p. 2]. Although they settled this case for a modest payment to Plaintiff, Defendants have filed their own motion for attorney's fees against Plaintiff's counsel, alleging that he and his law firm (1) "recklessly filed and pursued a factually meritless overtime claim," (2) "never sought available information" before filing suit about a statutory exemption, (3) adopted a "'sue first and ask questions later' approach," (4) "blindly continued to litigate Plaintiff's unsustainable overtime claim for six months," (5) "doubled down and pursued largely irrelevant written discovery," and (6) "unconditionally abandon[ed] (while still refusing to dismiss) Plaintiff's overtime claim . . . [o]nly when confronted with Defendants' Summary Judgment Motion." [ECF No. 89, p. 2].

But Plaintiff's counsel paints *Defendants* as the unreasonable parties, asking the question, "How far can FLSA defendants tenaciously litigate without being held accountable for the time and expense they cause to be incurred?" [ECF No. 86, p. 1]. Plaintiff argues that "Defendants cannot litigate tenaciously and then be heard to complain about the time necessarily spent by Plaintiff in response." [ECF No. 86, p. 12]. According to Plaintiff's counsel, "the majority of time expended in this case was the direct result of responding to Defendants' scorched earth litigation strategy." [ECF No. 86, p. 16].

Given this background, it is hardly surprising that the briefing on the fees and costs requests has itself been strident and extensive. Plaintiff filed a motion for costs [ECF No. 83]; Defendants filed an opposition response [ECF No. 85]; Plaintiff then filed

a motion for attorney's fees [ECF No. 86]; Plaintiff filed a reply in support of his request for costs [ECF No. 88]; Defendants filed their own motion for attorney's fees [ECF No. 89]; Defendants filed their opposition response to Plaintiff's motion for attorney's fees [ECF No. 91]; Plaintiffs filed an initial response opposing Defendants' motion for attorney's fees (which also served as a reply in support of his attorney's fees motion) [ECF No. 95]; Plaintiff filed a Court-permitted Amended Verified Response/Reply [ECF No. 97]; Defendants filed their reply in further support of their motion for attorney's fees [ECF No. 102]; and Plaintiff filed a Notice of Supplemental Authority [ECF No. 103].

That's an awful lot of post-settlement briefing for a case which settled for less than $800.

At bottom, though, and regardless of how many motions and memoranda were filed on the costs and competing fees requests, the material facts are relatively straightforward: Plaintiff's counsel (1) did not determine before trial that a statutory exemption applied, (2) did not ask Defendants about the applicability of the exemption before filing suit, (3) did not make a pre-filing demand, (4) continued to litigate after receiving evidence establishing the exemption, (5) declined to accept Defendants' tender of wages made less than two months after the lawsuit was filed (by claiming that a receptionist at his law firm was not authorized to accept an envelope containing the

tender), and (6) later demanded a general release as a condition for settlement even though Defendants and their insurer have claims against Plaintiff for property damage.

As outlined in greater detail below, Plaintiff's counsel, Elliott Kozolchyk, appeared to be far-more interested in generating attorney's fees for himself than in resolving a modest claim for his client's benefit. His actions strongly suggest a strategy of avoiding an early resolution in order to generate more fees. Indeed, two other district court judges who have denied Kozolchyk any attorney's fees (even though he represented a prevailing plaintiff in an FLSA case) reached similar conclusions about his conduct. For example, in a recent case, U.S. District Judge Patricia A. Seitz held that "it appears that Plaintiff's counsel's sole intent . . . was to run up his bill." *Nelson v. Kobi Karp Architecture & Interior Design, Inc.*, No. 17-23600, 2018 WL 3059980, at *3 (S.D. Fla. May 8, 2018).

In addition, the Undersigned received testimony (at an evidentiary hearing) that Plaintiff's counsel improperly attempted to solicit another employee to join the lawsuit. Kozolchyk denies the allegation and rejects the testimony as not credible.

Under these facts, the Undersigned **respectfully recommends** that Plaintiff be **denied** both a fees award and a costs judgment as a "prevailing party" (because the unique facts justify the conclusion that no fee is a reasonable fee and that a costs award would be unjust) and that his counsel be required to pay some (but not all) of

Defendants' attorney's fees under 28 U.S.C. § 1927 (counsel's liability for excess costs, expenses, and attorney's fees) and the inherent authority doctrine.

This Report and Recommendations will explain the relevant factual scenario and applicable legal principles and analysis in further detail. But, for purposes of this introduction, the Undersigned **respectfully recommends** that Plaintiff's counsel (and his law firm) be required to pay Defendants **$30,625.33** in attorney's fees.

## I.      Factual Background

The Undersigned previously provided a comprehensive summary of many of the relevant facts when I issued a Report and Recommendations on Plaintiff's Motion to Approve Settlement Agreement. [ECF No. 81]. In that motion, Olguin asked for an order approving as fair and reasonable a purported settlement agreement in this FLSA lawsuit and granting him leave to file a motion for attorney's fees and costs. [ECF No. 67].

The total amount of the alleged settlement is $783 -- $391.50 for the unpaid minimum wage claim and $391.50 as liquidated damages (i.e., double damages) on that claim. Olguin contends that he is entitled to attorney's fees as the prevailing party in this case (that has now generated more than 100 docket entries). But Defendants Florida Ultimate Heavy Hauling LLC ("FUHH") and two of its managers, Michael Cammarata and Amie Cammarata, take the position that not only is Olguin not entitled to fees and costs, but that *they* are entitled to fees and costs.

That earlier Report recommended that the motion to approve the wage settlement be approved and that each side could pursue applications for fees and costs. Judge Cooke adopted that Report and Recommendations. [ECF No. 82].

Olguin's FLSA lawsuit alleges that he worked for Defendants as a driver and laborer. It sought recovery for both overtime wages and minimum wages. The Statement of Claim attached to his Complaint estimates that he is owed $290 in unpaid minimum wages and $5,327.54 in unpaid overtime wages from March 13, 2017 through August 24, 2017. [ECF Nos. 1-3]. Therefore, his initial claim was for $5,617.54, which, if and when doubled as liquidated damages, yielded a potential claim of $11,235.08, plus reasonable attorney's fees and costs. Plaintiff submitted this exact Statement of Claim again with his "Notice of Compliance" concerning the Court's "Order of Court-Mandated Requirements in FLSA-Based Cases." [ECF Nos. 5; 11-1]. Both Statements of Claim contain a footnote explaining that "numbers are averages, estimates, and/or approximates. Numbers may change as information is uncovered through the discovery process." [ECF Nos. 1-3, p. 1, n. 1; 11-1, p. 1, n. 1].

Olguin would not have any type of FLSA overtime claim if he was an **exempt** employee, however. Given that Olguin is a truck driver who carried Department of Transportation and Federal Motor Carrier Service Act ("FMCSA") licenses and registrations, Olguin would not be owed any overtime if he was exempt from the FLSA's overtime provisions by the FMCSA, 49 U.S.C. § 31502.

Kozolchyk filed a single-count Complaint in September 2017, complaining of minimum wage and overtime violations under the FLSA. Plaintiff's counsel alleged:

- "Defendants failed to pay Plaintiff his full and proper overtime wages of 1.5 times Plaintiff's regular hourly rate for all hours worked over 40 each week."

- "Defendants failed to pay Plaintiff his full and proper minimum wages for hours worked during his employment."

[ECF No. 1, p. 2].

Kozolchyk filed Olguin's Complaint without making any effort to contact Defendants to discuss the claimed FLSA violations or determine if Plaintiff was exempt from the FLSA's overtime provisions.

### a. Overtime Claim

Plaintiff's Complaint acknowledged that FUHH "along with its employees [was engaged] in interstate commerce" and that Plaintiff was a "driver" for FUHH. [ECF No. 1, p. 1]. Information available to Plaintiff's counsel before (and provided to Plaintiff's counsel after) Plaintiff's Complaint was filed demonstrated that during his employment with FUHH: (1) Plaintiff possessed a Class A Commercial Driver's License; (2) Plaintiff was required to submit to U.S. Department of Transportation, Federal Motor Carrier Safety Regulation ("DOT FMCSR") drug testing; (3) Plaintiff was required to participate in DOT FMCSR regulated safety orientations; (4) Plaintiff maintained DOT FMCSR driver time logs; (5) Plaintiff was principally engaged as a driver; (6) Plaintiff operated a FUHH vehicle with a net weight of 17,000 pounds and a gross vehicle weight of 80,000

pounds; (7) Plaintiff regularly or from time to time drove FUHH's "commercial motor vehicle" to and from Port Everglades to transport property and goods already in interstate or foreign commerce which had not then reached a point of final destination; (8) the property was being transported for sale, lease, rent, bailment, or to further a commercial Enterprise; and (9) FUHH is registered with the DOT FMCSR as an interstate motor carrier.

Plaintiff's Complaint does not state whether Plaintiff was exempt or non-exempt from the FLSA overtime provisions by the FMCSA exemption. In Plaintiff's Reply in Support of Plaintiff's Bill of Costs, Kozolchyk said that "Plaintiff's counsel cannot recall any time expended specifically litigating Plaintiff's overtime claim." [ECF No. 88, p. 6, n. 12]. As noted, however, "whether Plaintiff's counsel actively pursued the overtime claim or not, its filing and pendency required **Defendants** to expend time defending against it." [ECF No. 89, p. 6 (emphasis added)].

### b.  Minimum Wage Claim

Plaintiff's minimum wage claim concerned Plaintiff's final partial week of work, which Kozolchyk initially valued in the Statement of Claim at $290, exclusive of liquidated damages. [ECF No. 1-3].

Because Plaintiff abandoned his position mid-work week, his automatic payroll deposit for a full week's salary was reversed and a check (in the amount of $510) was prepared and made available to him on August 25, 2017 -- 11 days before Kozolchyk

filed the lawsuit. Additional paychecks were prepared and made available at the same time, in the amount of $859.11. Plaintiff never retrieved his final paycheck. Kozolchyk never asked Defendants about the status of Plaintiff's final paycheck before filing suit on this $290 (exclusive of liquidated damages) claim.

Neither Plaintiff's Complaint, Plaintiff's Motion for Attorney's Fees, nor any other filing by Plaintiff's counsel indicates what would have prevented Kozolchyk from making such an inquiry about his client's final wages.

According to Defendants, on October 26, 2017, 51 days after Kozolchyk filed this lawsuit, Defendants unconditionally tendered to Plaintiff's counsel wages in the gross amount of $859.11. They alleged that Kozolchyk declined to accept the tender without explanation. Plaintiff's Motion for Attorney's Fees now posits that the unconditional tender was refused because "[his] receptionist can receive deliveries but is not authorized to sign anything on behalf of Plaintiff's counsel." [ECF No. 86, p. 3].

More specifically, Kozolchyk argues that there was no "refusal" to accept the tendered paychecks, and he provides the following explanation:

> On October 26, 2017, Defendants sent a courier to Plaintiff's counsel's office. Mr. Kolb [defense attorney Kelly Kolb] made no appointment, advance arrangements, nor gave prior notice that Defendants were making any sort of delivery. Neither Plaintiff's counsel, nor anyone employed by Plaintiff's counsel's law firm, was in the office at the time of Defendants' surprise delivery. The receptionist in Plaintiff's counsel's office building is not an employee or subcontractor of Plaintiff's counsel's law firm. The receptionist can receive deliveries but is not authorized to sign anything on behalf of Plaintiff's counsel. The courier refused to deliver the package because the receptionist would not sign a document.

> Neither the receptionist nor the undersigned refused any delivery. Later that day, Mr. Kolb sent [a] letter . . . claiming that Plaintiff's counsel's office "refused" Defendants' paychecks to Plaintiff. At no point before, during, or immediately after the surprise delivery did Defendants communicate any desire or intention to settle Plaintiff's claims.

[ECF No. 86, p. 3].

> In response, Defendants contend that this

> "explanation" strains credulity as it would presumably mean that the receptionist could not sign a FedEx or UPS delivery receipt "on behalf of Plaintiff's counsel." Regardless, knowing that the tender was unconditional and that it consisted of Plaintiff's final partial-week's wages, Plaintiff's counsel was presented with, but *disregarded*, a golden opportunity to: 1) achieve a better recovery for his client than he ultimately achieved 245 days later; and 2) avoid incurring 89% of the attorney's fees, expenses and costs he now contends are reasonable and necessary.

[ECF No. 89, p. 7].

### c. Plaintiff's Discovery Requests

Approximately 60 days after filing the Complaint, Kozolchyk served written discovery, consisting of 73 Requests for Production to all Defendants and separate sets of Interrogatories and Requests for Admission to *each* of the three Defendants. These discovery requests sought discovery on (1) issues Defendants had admitted in their Answer, (2) whether Defendants had a criminal record, (3) documents previously produced to Plaintiff's counsel, (4) witnesses previously disclosed by Defendants, and (5) issues requested in other discovery requests.

Kozolchyk later agreed to withdraw 17 of the 73 Requests.

### d. Defendants' Summary Judgment Motion

Defendants represent that they began drafting their summary judgment motion [ECF No. 30] in mid-January 2018 and filed it on March 12, 2018. The summary judgment motion argued, among other grounds, that Olguin's overtime claim was barred by the FMCSA exemption.

Only after this summary judgment motion filing did Plaintiff's counsel unconditionally abandon Plaintiff's overtime claim. Nevertheless, Plaintiff never actually, technically *dismissed* his overtime claim.

According to Defendants, no settlement demand was ever made by Plaintiff until a few hours before the filing of Defendants' summary judgment motion, when Plaintiff's counsel submitted his *first* demand. Moreover, this demand was conditioned on Defendants' release of Plaintiff from all claims, including a claim against Plaintiff for $8,000 in property damage he caused by colliding with a different parked car virtually every week he worked for FUHH.

### e. Settlement Negotiations History

Defendants provide the following summary of the settlement discussions:[1]

- Preliminary settlement discussions were stymied by Plaintiff's insistence (in his 3/12, 5/18, 5/24 & 5/28/18 demands) on obtaining a full release of claims from Defendants – a term Plaintiff's counsel knew Defendants could not accept[.]

---

[1] The parties attended a mediation on January 28, 2018, which resulted in an impasse. Kozolchyk has advised that the impasse occurred after approximately thirty minutes. [ECF No. 86, p. 4].

- Contrary to the sworn statements in Plaintiff's Motion for Attorney's Fees, Defendants did not insist on Plaintiff waiving fees in Defendants' offers of 6/4, 6/5, 6/6, 6/11 and 6/12/18[.]

- As of 6/11/18, the parties had agreed on all disputed settlement terms except whether the settlement agreement would contain a recital stating the amount of Plaintiff's claims recited in his Statement of Claim[.]

- Prior to Defendants' 6/11/18 offer (for which all parties agreed on all terms but one), Plaintiff's last demand (June 6, 2018) required Defendants to agree to a denial of Defendants' Motion to Preclude Direct Solicitation [DE 10] with an assessment of fees against Defendants and defense counsel for the filing of that Motion and a stipulation that Plaintiff's overtime claim was filed in good faith – terms Plaintiff's counsel knew would not be accepted and which actually backed up the negotiations to beyond where they started 3 months earlier.

- In lieu of concluding discussions on the sole remaining term of settlement on June 11, 2018, Plaintiff's counsel discontinued those discussions. Indeed, Plaintiff never responded to Defendant's June 11, 2018 offer. Only after defense counsel called Plaintiff's counsel on June 12, 2018, was there an actual discussion of final settlement terms. Plaintiff's counsel, however, insisted that he would continue to litigate his client's $788 claim unless defense counsel agreed to send an email *dictated by Plaintiff's counsel* – the June 12, 2018 email, the subject of Plaintiff's Motion to Approve Settlement [ECF No. 67]. Thus, the suggestion throughout Plaintiff's Motion for Fees that Defendants impeded an early resolution of this case is fiction.

- On June 12, 2018 – 280 days after Plaintiff's Complaint was filed – Plaintiff's counsel finally agreed to accept a second unconditional tender – this time of $783.00 – to resolve Plaintiff's minimum wage claim. Plaintiff's counsel represented that this new and improved figure was "100% of the claimed minimum wages owed." While greater than Plaintiff counsel's stated $580 (inclusive of liquidated damages) valuation of the minimum wage claim throughout this litigation, this figure is obviously *less* than the $859.11 unconditionally tendered by Defendants 245 days earlier on October 26, 2017.

[ECF No. 89, pp. 9-10].

### f.   The Motion to Bar Solicitation of Other Plaintiffs

The day after answering the Complaint, Defendants filed a motion to bar direct solicitation of potential plaintiffs, alleging that "an individual identifying himself as an attorney directly solicited a former FUHH truck driver" to "join this lawsuit." [ECF No. 10, pp. 1-2]. The motion alleged that the attorney told the former driver (later identified as Glenn Pryor) that the driver had a "strong case" but needed to hire that attorney's law firm "to get the money he deserved." [ECF No. 10, p. 3]. The motion further alleged that the attorney refused to identify himself, blocked his number from the driver's cell phone, and refused to say how he obtained the driver's name or contact information. Noting that it had no other pending overtime lawsuits except this one, FUHH alleged in its motion its belief that Plaintiff's counsel telephoned the driver and solicited his involvement as another plaintiff.

Plaintiff opposed the motion, represented that his counsel did not have the communications outlined in FUHH's motion, and asserted that the motion was "a fabrication intended to smear Plaintiff's counsel." [ECF No. 17, p. 1]. FUHH filed a reply, and Judge Cooke referred the motion to the Undersigned. [ECF Nos. 20; 28]. The Undersigned held an evidentiary hearing on May 24, 2018. [ECF No. 39]. During the hearing, both Plaintiff's counsel and defense counsel testified.

Defendants' motion was based on Florida Bar Rule 4-7.18(a)(1), which prohibits all verbal direct solicitations of potential clients. Specifically, the Rule states:

"[A] lawyer may not solicit . . . professional employment from a prospective client with whom the lawyer has *no family or prior professional relationship*, in person or otherwise, when a significant motive for the lawyer's doing so is the *lawyer's pecuniary gain*. The term 'solicit' includes contact . . . by *telephone*."

Florida Bar Rule 4-7.18(a)(1) (emphasis added).

"Cold calls" have been found to be one type of direct in-person solicitation prohibited by Florida Bar Rule 4-7.18(a)(1). *See* Handbook on Lawyer Advertising and Solicitation 4-5 (The Florida Bar, 11th ed. 2018). Further, the Florida Bar Rules require an attorney to fully disclose the source of the attorney's information about the potential client's legal matter to "avoid misleading the recipient [of an attorney's direct solicitation] into believing that the lawyer has particularized knowledge about the recipient's matter [when] the lawyer does not." Comment to Rules Regulating The Florida Bar, Rule 4-7.18. Specifically, "the lawyer . . . must disclose sufficient information or explanation to allow the recipient to locate the information that prompted the communication from the lawyer." *Id.*

### g.  Evidence Presented at the Hearing

Pryor is a former driver for FUHH, having last worked for FUHH in 2016. [ECF No. 52, pp. 14:21-15:14]. Pryor, a disinterested third-party, appeared and testified pursuant to a subpoena. [ECF No. 52, p. 15:7-17]. Pryor missed work to testify at the evidentiary hearing and did not want to be at the evidentiary hearing. [ECF No. 52, p. 24:16-18].

Pryor testified that he received a cell phone call on September 19, 2017 at 11:22 a.m. in the morning. [ECF No. 52, p. 17:11-25]. The caller told Pryor that he was a lawyer. [ECF No. 52, pp. 19:20-20:2, 28:1-8]. The caller stated that he represented a former employee of FUHH. [ECF No. 52, p. 18:15-22]. The caller said he was building a strong case against FUHH. [ECF No. 52, p. 21:14-16]. The caller attempted to have Pryor hire the caller to represent Pryor in a lawsuit against FUHH. [ECF No. 52, pp. 20:9-11, 21-25]. The caller told Pryor that if he went along with the caller, the caller could get Pryor the money that FUHH owed Pryor. [ECF No. 52, pp. 18:24-19:2].

The caller also told Pryor that if FUHH did not pay him the money they owe him, FUHH would be required to give Pryor the vehicles FUHH used to run its operations. [ECF No. 52, p. 19:6-7]. The caller refused to tell Pryor how he obtained Pryor's cell phone number, stating that it was not important. [ECF No. 52, pp. 19:12-13, 20:18-20]. The caller never identified himself to Pryor by name and did not disclose who he was representing. [ECF No. 52, p. 27:4-14].  The caller was determined to get Pryor to hire him as his representative in the pending lawsuit. [ECF No. 52, p. 20:10-11]. Pryor confirmed that the caller was male. [ECF No. 52, p. 19:18-19]. Pryor had not heard the caller's voice before September 19, 2017. [ECF No. 52, p. 20:12-14]. Pryor was not consulting or seeking to consult with a lawyer in September of 2017 on any matter. [ECF No. 52, p. 20:15-17].

The caller did not ask Pryor how many hours he drove while at FUHH or whether he generated any records that would reflect hours of work. The caller did not ask Pryor any questions about the types of loads he moved while at FUHH, his origination points or destination points, whether he was a DOT-certified driver, or whether FUHH was a DOT-certified carrier. [ECF No. 52, p. 21:7-25].

After Pryor received this call, he called his former FUHH co-worker Robert Morales, who was still working at FUHH at the time of the call. [ECF No. 52, pp. 22:2-23:8]. Pryor talked with Morales twice, and these conversations are reflected on Pryor's cell phone records, which were admitted into evidence without objection. [ECF No. 52, pp. 23:9-21, 24:2-8]. Pryor asked Morales to inform Amie Cammarata that someone was calling Pryor about suing FUHH. [ECF No. 52, p. 24:10-18]. Pryor voluntarily spoke with defense counsel about the anonymous call he received on September 19, 2017. [ECF No. 52, pp. 24:20-25:1].

By the time of his telephone conversation with defense counsel, Pryor had received or placed more than one hundred calls on his cellphone. [ECF No. 52, p. 25:10-15]. Pryor's cell phone only stored the last forty or fifty calls at a time. [ECF No. 52, p. 25:6-18].

Pryor overheard Plaintiff's counsel, Kozolchyk, speaking in court before the evidentiary hearing began. [ECF No. 52, p. 25:19-21]. Pryor testified that the voice he heard on his cell phone during the September 19, 2017, 11:22 a.m. call, **was** Kozolchyk's

voice. [ECF No. 52, p. 25:22-24]. Kozolchyk has a distinctive way of speaking, and the tone and timbre of his voice may well be atypical enough for someone like Pryor to recognize it ten months after his conversation with the person soliciting his legal business.

Kozolchyk denied making the phone call to Pryor. [ECF No. 52, p. 31:10-11]. He stated that he was familiar with Florida Bar Rule 4-7.18(a)(1). [ECF No. 52, p. 30:19-22]. Kozolchyk stated that if Pryor were to be believed, that the phone call he received would be a violation of Florida Bar Rule 4-7.18(a)(1). [ECF No. 52, pp. 31:25-32:6].

Kozolchyk is the only male attorney involved in Plaintiff's lawsuit. [ECF No. 52, p. 32:8-11]. Kozolchyk has no prior relationship with Pryor, whether familial or professional. [ECF No. 52, p. 32:12-17]. Kozolchyk's firm website touts its technology expertise and its use in his law practice. [ECF No. 52, pp. 32:18-33:1]. Kozolchyk testified that by adding plaintiffs to a case, the work level increases for that case and thus a plaintiff's attorney may seek more fees for that case. [ECF No. 52, pp. 35:13-16, 36:10-13].

Kozolchyk submitted redacted telephone records, redacting all numbers outside of 7:00 a.m. to noon on September 19, 2017. [ECF No. 52, p. 43:6-18]. He also redacted the last four digits of other telephone calls on the phone logs at approximately the time of the call to Pryor. [ECF No. 52, p. 50:6-19].

Kozolchyk argues that Pryor's testimony is not credible because (1) his identification arose from the comparison of two brief interactions more than eight months apart; (2) Pryor was tired, aggravated, and did not want to be bothered when the call came in; and (3) Pryor initially testified that he received the call "late in the evening" but then, after being shown a call log, changed his recollection and said that he received the call at 11:22 in the morning. [ECF No. 57-1, pp. 4-5].

Defendants, however, note that Pryor "identified – without hesitation or question – Mr. Kozolchyk as the caller." [ECF No. 56-1, p. 8]. In addition, there are other factors weighing against Kozolchyk's denial: (1) his voice is distinctive, and Pryor may have reason to remember it many months later when he heard Kozolchyk speak in Court; (2) Pryor does not seem to have a personal interest in the outcome of the case; (3) it is not illogical to theorize that an attorney already representing one driver in an FLSA lawsuit might try to generate additional drivers for the same defendant as clients; and (4) the Undersigned is hard-pressed to accept Kozolchyk's theory that some *other* FLSA attorney made a cold call to Pryor by scanning the public dockets on CM/ECF and learning of the lawsuit against FUHH.

Although that tactic would reveal that Olguin is a plaintiff and that FUHH is the defendant, how would another attorney who obtained the basic lawsuit information learn that *Pryor* is a former driver (and potential FLSA claimant) and how would that attorney obtain Pryor's cellphone number? His name does not appear on the public

CM/ECF docket, and no submission was filed in this case mentioning his name until Defendants filed their motion to bar direct solicitation. On the other hand, Olguin, who is Kozolchyk's client, might know the cell phone number of Pryor, but there is certainly no showing that some other attorney contacted Kozolchyk's client to ask him for the names and contact numbers of other potential FLSA claimants.

Although the Undersigned entered a pre-hearing order requiring Kozolchyk's office manager and paralegal (i.e., one person performing both functions) to appear, neither defense counsel nor Kozolchyk wanted to ask her any questions even though she was sitting with Kozolchyk at counsel table. [ECF No. 52, p. 55:7-15].

The phone records from Kozolchyk's office did not show a telephone call to Pryor at 11:22 a.m., the time reflected on Pryor's phone records for incoming calls. [ECF No. 52, p. 17:17-24]. Pryor testified that he was in Vance, Alabama when the telephone call at issue was received. The Undersigned takes judicial notice that Vance, Alabama is in the **central** time zone, which means that it is one hour earlier there than in South Florida, where Kozolchyk's office is located. Therefore, a phone call from South Florida (if that is where it was made) that Pryor received in Alabama at 11:22 a.m. would have been made from South Florida at **12:22 p.m.** (because of the time zone difference). The phone records submitted by Kozolchyk did not include calls after 12:00 p.m., however.[2]

---

[2]      Based on information in Defendants' motion, which did not note that the recipient of the telephone call was in a different time zone, the Undersigned's order

[ECF No. 52, p. 43:6-13]. Defendants contend that "innumerable methods exist by which counsel could have made unrecorded and untraceable calls to Mr. Pryor, including Google Voice." [ECF No. 102, p. 6].

### h.  Post-Hearing Events

Approximately two weeks after the evidentiary hearing, Olguin filed a motion for leave to file a summary judgment motion on Defendants' fourth affirmative defense, contending that Defendants' attempt to tender payment occurred *after* this lawsuit was filed and therefore could not be a legitimate affirmative defense or a ground upon which to grant summary judgment in Defendants' favor. [ECF No. 53]. Defendants opposed the motion [ECF No. 55], and Olguin then filed a "Notice of Settlement" [ECF No. 59]. The notice explained that the parties had settled Plaintiff's minimum wage claim and that Plaintiff had agreed to "dismissal of his overtime claim [with] prejudice." [ECF No. 59, p. 1].

It also gave notice that "Defendants have advised that they want Plaintiff's *overtime claim* dismissed with prejudice." [ECF No. 59, p. 1 (emphasis added)]. Later that same day, the Court entered an order administratively closing the case upon notice of settlement. [ECF No. 60].

---

required Kozolchyk to bring telephone records only from 7:00 a.m. to noon. [ECF No. 33]. Neither Kozolchyk nor defense counsel made any comments at the hearing, or in post-hearing proposed orders, about the difference in time zones.

Even later that same day, Defendants filed their Supplement to Plaintiff's Notice of Settlement. [ECF No. 61]. In this notice, Defendants advised that they had "re-tendered the full amount claimed by Plaintiff in unpaid minimum wages -- $783 -- inclusive of liquidated damages." [ECF No. 61, p. 1]. They also advised that "there is no settlement (i.e., compromise) of Plaintiff's minimum wage claim." [ECF No. 61, p. 1]. Their supplement also contended that "Plaintiff had previously abandoned [DE 31] his $10,137.64 [DE 11-1] overtime claim, but has declined to dismiss that claim since it was abandoned March 26, 2018." [ECF No. 61, p. 1]. Finally, the supplement further highlighted the fact that "Defendants have advised Plaintiff's counsel that they want *all* claims dismissed with prejudice." [ECF No. 61, p. 1 (emphasis added)].

The next day, Plaintiff filed a response to Defendants' supplement. [ECF No. 62]. It said that the supplement is "incorrect" because the "parties have reached a settlement." [ECF No. 62, p. 1]. It contended that "Plaintiff did not 'abandon' his overtime claim" and "never 'declined to dismiss' his overtime claim." [ECF No. 62, p. 1]. It further contended that "only yesterday did Plaintiff obtain Defendants' agreement to settle this case in a way that did not deprive the Court of its jurisdiction to determine Plaintiff's counsel's attorney's fees and costs." [ECF No. 62, p. 1]. The response argued that "Defendants are now attempting to deprive the Court of jurisdiction to determine Plaintiff's attorney's fees and costs post-settlement." [ECF No. 62, pp. 1-2].

Olguin then filed a motion for an order approving the settlement and giving him leave to file a motion for fees and costs. [ECF No. 67]. The motion alleged that the settlement was reached on June 12, 2018, during a telephone conversation between counsel. The motion then advised that defense counsel memorialized the settlement agreement in a follow-up email and that Plaintiff's counsel confirmed it. The language from defense counsel's email is as follows: "Defendants will unconditionally tender today 100% of the claimed minimum wages owed to Mr. Olguin as follows: We have agreed that this tender is in settlement of the Plaintiff's minimum wage claim." [ECF No. 67, p. 2]. Plaintiff's counsel sent a confirming email forty-two minutes later that said only: "Confirmed." [ECF No. 67, p. 3].

Over the next three weeks, counsel attempted to finalize the purported settlement agreement. They exchanged multiple emails and drafts of a written settlement agreement. But, as outlined in Plaintiff's motion, Plaintiff's counsel "could not reach agreement with Defendants' counsel" on how to "finalize a formal settlement agreement." [ECF No. 67, p. 3]. The attachments to Plaintiff's motion demonstrated that the parties disputed several material points, including Defendants' position that the draft written agreement prepared by Plaintiff's counsel "fails to provide for any release of the defendants for the claims (excluding attorney's fees) asserted in the lawsuit." [ECF No. 67-1, p. 4]. The post-telephone call emails also establish that Defendants deemed the draft settlement agreement unacceptable. Defense counsel noted that "since

we will both be moving for fees, I suppose I can live with the agreement's silence on

that point." [ECF No. 67-1, p. 3].

Defendants filed an opposition response to Plaintiff's motion. [ECF No. 72]. They

say that Plaintiff's motion is an effort to create the "illusion" that Plaintiff compromised

his $10,137.64 overtime claim to resolve his $783 minimum wage claim. [ECF No. 72, p.

2]. They contend that there is no compromise of the FLSA claims. Their response also

argues that:

> Plaintiff's counsel filed overtime and minimum wage claims without
> conducting any reasonable pre-suit investigation, filed the claims anyway,
> pursued irrelevant discovery in the form of 73 requests for production to
> each of the three defendants to exert financial pressure on defendants,
> persisted in prosecuting an overtime claim for over 200 days after it was
> obvious that the claim had no merit as Plaintiff was exempt from the
> FLSA's overtime requirements under the FMSCA, and refused repeated
> tenders of (more than) the full amount of claimed minimum wages and/or
> liquidated damages.

[ECF No. 72, p. 5].

Defendants' response asked the Court to deny Plaintiff's motion. [ECF No. 72, p.

7]. Plaintiff filed a reply in which his counsel joined Defendants' strategy of lobbing

allegations of misconduct against opposing counsel. [ECF No. 76]. He asked that the

Court approve the settlement as fair and reasonable and permit him to submit a motion

for attorney's fees and costs.

The Court (Judge Cooke) adopted the Report and, in her order, permitted the

parties to file motions for attorney's fees and costs. [ECF No. 82].

Because Judge Cooke had previously entered an order administratively closing the case upon notice of settlement, all prior motions were automatically terminated, including Defendants' motion to bar direct solicitation of potential plaintiffs. [ECF No. 60]. Therefore, there was no need for the Undersigned to conclusively rule on a terminated motion or to evaluate Kozolchyk's credibility about his under-oath denial of telephoning Pryor in a "cold call" scenario.

### i.   Additional Contentions

At bottom, Plaintiff contends that he is entitled to both costs and attorney's fees because he prevailed in an FLSA action, which makes an award obligatory. Defendants acknowledge that Plaintiff prevailed but argue that this case is one where a reasonable fee is no fee and that the Court has jurisdiction (both under its inherent authority and 28 U.S.C. § 1927) to sanction Kozolchyk and his law firm (for not conducting a reasonable pre-suit investigation; for litigating in the face of clear, contrary evidence; for litigating even though payment was tendered; and for multiplying the proceedings).

### j.   Other Judicial Criticisms of Kozolchyk

In determining whether a legal claim or factual contention is objectively frivolous for purposes of Federal Rule of Civil Procedure 11, the Court may consider whether the litigant or his counsel has a history of bringing unmeritorious litigation. *Cf. Bilal v. Driver*, 251 F.3d 1346, 1350 (11th Cir. 2001), *cert. denied*, 534 U.S. 1044 (2001) (noting that district court "was all too familiar with Plaintiff's repetitive and trifling litigation

tactics"); *Petrano v. Nationwide Mut. Fire Ins. Co.*, No. 1:12-cv-86, 2013 WL 1325201, at *6 (N.D. Fla. Feb. 4, 2013) (same). Although Defendants have not expressly relied upon Rule 11 as a ground for seeking attorney's fees against Kozolchlyk and his firm, they have relied upon the Court's inherent authority and 28 U.S.C. § 1927. Therefore, the Undersigned deems it relevant to consider other cases denying FLSA attorney's fees to Kozolchyk or assessing sanctions against him and his firm:

(1) *Nelson v. Kobi Karp Architecture & Interior Design, Inc.*, No. 17-23600, 2018 WL 3059980 (S.D. Fla. May 8, 2018), *reconsideration denied*, 2018 WL 3059647 (June 19, 2018). In *Kobi Karp*, the Court (United States District Judge Patricia A. Seitz) denied Plaintiff's motion for attorney's fees because Kozolchyk, although representing the prevailing plaintiff in an FLSA lawsuit, "unreasonably and unnecessarily dragged this case out in order to increase his fees." *Id.* at *1.

The Court emphasized that Kozolchyk did not contact Defendants to resolve the matter before filing the lawsuit and continued to litigate the case after receiving tendered checks in an amount greater than the claim. More specifically, Judge Seitz noted that, of the 25.8 hours of time which Kozolchyk was seeking fees for in the motion, 17.7 of those hours were incurred *after* he received the two checks in full payment of the damages sought. In addition, Kozolchyk rejected a defense proposal to also pay him $2,000 for fees and costs the day after the lawsuit was served with the summons and complaint.

(2) *Batista v. South Florida Woman's Health Associates, Inc.*, No. 18-61075, 2018 WL 6531605 (S.D. Fla. Nov. 13, 2018). In *Batista*, the magistrate judge recommended that a Kozolchyk-filed motion for attorney's fees in an FLSA case be denied because the lawsuit "was a prototypical 'nuisance suit' for which an award of fees would be unreasonable and unjust." *Id.* at *1. Kozolchyk filed objections, but United States District Judge Federico A. Moreno adopted the Report and Recommendations. *Batista v. South Florida Woman's Health Associates, Inc.*, U.S. District Court for the Southern District of Florida, Case No. 18-61075, ECF Nos. 38; 40.

Similar to his conduct in *Kobi Karp*, Kozolchyk refused to settle a lawsuit after receiving a defense offer to pay the entire amount claimed by Plaintiff, as well as costs and attorney's fees of $1,000. Moreover, the magistrate judge noted that "at most, a mistake had occurred, which could easily be rectified." *Id.* at *3. The mistake concerned a missing check, which Defendants were willing to replace with a new check. The Report noted that "the only obstacle to resolution throughout was the fee demand of Plaintiff's counsel." *Id.* In addition, the Report emphasized that "at all times this case has involved a lost paycheck – nothing more" and concluded that "Plaintiff's fee demands were excessive relative to the minimal work counsel had genuinely invested in the case." *Id.* at *4-5.

II.     **Applicable Legal Standards and Analysis**

a.   **Denying Prevailing Party Attorney's Fees Under the FLSA**

Although the FLSA requires that attorney's fees be awarded to a prevailing plaintiff, courts acknowledge "'special circumstances' that can render an attorney's fees award unjust, and so-called nuisance settlements present such a circumstance." *Batista*, 2018 WL 6531605, at \*3 (citing *Tyler v. Corner Constr. Corp.*, 167 F.3d 1202, 1206 (8th Cir. 1999)).

Based on the special-circumstances rationale, several district courts in our district have either denied or severely reduced attorney's fees to prevailing FLSA plaintiffs. For example, in *Goss v. Killian Oaks House of Learning*, 248 F. Supp. 2d 1162, 1168 (S.D. Fla. 2003), the Court denied fees to an FLSA plaintiff in a case involving meager damages which could have easily been resolved by a few pre-suit telephone calls. Although the *Goss* Court certainly recognized the FLSA's mandatory fees provision, it then explained that "an entitlement to attorney's fees cannot be a *carte blanche* license for Plaintiffs to outrageously and in bad faith run up attorney's fees without any threat of sanction." *Id.*

The *Goss* Court found that the $316 resolution was nothing more than a nuisance settlement designed to avoid the expense of litigation and that defense counsel had attempted to resolve the case several times. The Court was straightforward in its condemnation of the tactics used by Plaintiff's counsel. It noted that counsel "seems to have leveraged a small sum as a stepping-stone to a disproportionately large award of

attorney's fees." *Id.* In doing so, the Court recognized counsel's argument which "places the blame squarely on Defendants' shoulders" because they "are at fault for fighting the litigation in the first place." *Id.* at 1168-69. The Court also noted that counsel "continuously employed a strategy of delay and obfuscation in his attempt to ward off the inevitable resolution of the case." *Id*. at 1168. The Court described Plaintiff's counsel's actions as "calculated to 'churn' the file and extract as much attorney's fees as possible from what was at best a modest claim not deserving of the many hours of work." *Id.* at 1169.

Concluding that Plaintiff's counsel's tactics shocked the Court's conscience, the *Goss* Court blasted the "strategy of 'shaking down' Defendants with nightmarishly expensive litigation solely in pursuit of attorney's fees must not be rewarded." *Id.*  Not only did the *Goss* Court deny Plaintiff's counsel any attorney's fees (because awarding them would be "unreasonable and indeed, unjust"), but it also denied costs. *Id.*

In appropriate circumstances, the Eleventh Circuit Court of Appeals has affirmed orders denying attorney's fees to a prevailing FLSA plaintiff. *See, e.g., Sahyers v. Prugh, Holliday & Karatinos, P.L.,* 560 F.3d 1241, 1246 (11th Cir. 2009) (affirming district judge's order denying attorney's fees award and costs in an FLSA lawsuit brought by a paralegal against her law firm). In affirming the zero-fees-and-zero-costs award, our appellate court noted that neither Plaintiff nor her attorney made a pre-suit written demand for payment and "made no attempt to inform Defendants of her claim or to

collect any of the allegedly outstanding sums from them." *Id.* at 1243. Plaintiff accepted a Federal Rule of Civil Procedure 68 offer of judgment for $3,500, and the appellate court held that the trial judge did not abuse his discretion in denying fees and costs because the court based its ruling on its inherent powers to supervise the conduct of lawyers who appear before it. *Id.* at 1246.

In other cases, courts in the Southern District of Florida have drastically reduced the amount of attorney's fees requested by counsel for a prevailing FLSA plaintiff. *See, e.g.*, *Roldan v. Pure Air Sols., Inc.*, No. 07-22203, 2010 WL 410571, at *3 (S.D. Fla. Jan. 29, 2010) (reducing the lodestar by 85% in order to "address the unfairness involved in a sledgehammer being used to crack a nut").

But, as noted, other district courts have denied completely attorney's fees and costs, including district courts in the Eleventh Circuit outside of the Southern District. *See Malden v. Wings Over Emerald Coast Inc.*, No. 3:18-cv-260, 2019 WL 1245866, at *10 (N.D. Fla. Feb. 20, 2019) (recommending that fees motion brought by prevailing FLSA plaintiff be denied in its entirety and noting that counsel sought approximately $28,000 in attorney's fees in a case involving a simple matter worth less than $545 to plaintiff); *see also Woods v. On Baldwin Pond, LLC*, No. 6:13-cv-726, 2016 WL 4927639, at *2, *4 (M.D. Fla. Sept. 16, 2016) (denying plaintiff's request for more than $48,000 in attorney's fees after he obtained a nominal judgment of $720 and explaining that a lawyer trying to

"shak[e] down" an employer in a case involving "miniscule damages" is a special circumstance where a reasonable fee and costs award is zero).

The Undersigned finds it significant that many of the factors identified by courts as significant when denying a fees or costs request from a prevailing FLSA plaintiff are present here. First, the Eleventh Circuit has clearly held that "it is entirely proper for the court to take into account the results achieved" when assessing a fees request. *Walker v. Iron Sushi, LLC*, 752 F. App'x 910, 916 (11th Cir. 2018). Likewise, it has held that it is appropriate to consider the requested fees/costs award "in comparison to both the amount recovered **and** the amount originally sought in the statement of claim" -- and that doing so is not an impermissible "double reduction." *Id.*

Here, Plaintiff's statement of claim was for $11,235 (including liquidated damages) and he settled for $783.

Second, the claim largely involved an administrative scenario generated by the simple fact that Plaintiff ended his employment in the middle of the week.

Third, neither Olguin himself nor his counsel contacted Defendants to see if the dispute could be amicably and quickly resolved without the need to file a lawsuit.

Fourth, Kozolchyk did not first contact Defendants or their counsel to determine if the FMCSA exemption applied, an inquiry which would have been reasonable given Olguin's status as a truck driver.[3]

Fifth, Kozolchyk's focus on his own fees is the only logical explanation for the failure to accept Defendants' tender of the check for payment. The Undersigned is not at all convinced by Kozolchyk's after-the-fact explanation that the receptionist was not authorized to accept a package for him.

Sixth, Kozolchyk's actions seem designed to perpetuate the litigation, rather than to reach a just, efficient, and timely result for his client. In other words, similar to the phrase used by other courts, the Undersigned finds that his conduct was part of a strategy to churn the file and create unnecessary attorney's fees.

Seventh, the requested amount of fees is grossly lopsided when compared to both the amount in controversy and the final settlement.

---

[3]     Although Kozolchyk contends that FUHH's website does not mention that it transports interstate commerce, a search of the FMCSA website would have revealed that FUHH is a registered interstate motor carrier. [ECF No. 102, p. 3]. Moreover, the mere fact that Kozolchyk contends that Olguin told him that he personally did not make interstate trips is legally irrelevant for the exemption because the focus is on the interstate activities of all drivers in a pool of drivers (not merely the activities of the one driver) when the driver is part of a pool. *Allen v. Coil Tubing Servs., LLC*, 846 F. Supp. 2d 678, 694-95 (S.D. Tex. 2012) (noting, in a section entitled "individual employee analysis not appropriate," that an employer seeking an exemption need not submit "proof that each individual employee regularly transported property by motor vehicle across state lines"), *aff'd*, 755 F.3d 279, 284-86 (5th Cir. 2014) (precedent forecloses an employee-by-employee analysis).

Eighth, Kozolchyk unreasonably insisted on a release from Defendants even though he knew they still had a claim against Olguin for damages to the truck.

Ninth, and finally, the Undersigned cannot evaluate Kozolchyk's conduct here in a vacuum. Other courts have castigated him for this very scenario. So, his tenacious, difficult, and uncooperative attitude in this case is hardly an anomaly.

Under these circumstances, which are special, the Undersigned concludes that an appropriate attorney's fee is no fee and that costs should also be denied.

### b.  Bad Faith Fees Against Plaintiff's Counsel

Now that the Undersigned has made a recommendation about Plaintiff's request for attorney's fees and costs, I must now turn to Defendants' reciprocal request against Kozolchyk and his law firm (Koz Law, P.A.) under 28 U.S.C. § 1927, the Court's inherent power, and Local Rule 7.3(a).

Initially, the Undersigned notes that Kozolchyk appears to misunderstand the theories underlying the fees motion against him and his law firm. He seems to focus on the argument that Olguin, not FUHH, was the prevailing party under the FLSA because he obtained a settlement (albeit in an extremely modest amount) approved by the Court. But this point, while correct, misses the mark entirely. The issue under § 1927 and the Court's inherent power is not whether Kozolchyk represented a prevailing party. Rather, the issue is whether he engaged in bad faith litigation (even though his client technically prevailed with a $783 minimum wage claim). *See Herard v. ATN Rest.,*

*Inc.*, No. 07-60269, 2008 WL 123596, at *3 (S.D. Fla. Jan. 8, 2008) (holding that Court has

inherent power to assess attorney's fees against Plaintiff's counsel in an FLSA lawsuit).

There is nothing in the text of the statute to indicate that it cannot be applied

against attorneys representing the prevailing party, and Kozolchyk has not called

attention to any case standing for that theory. So Kozolchyk's status as an attorney

representing a (slightly) prevailing plaintiff does not render him immune from a § 1927

fees award. *Roadway Exp., Inc. v. Piper*, 447 U.S. 752, 762 (1980) (stating that statute "does

not distinguish between winners and losers, or between plaintiffs and defendants").

Moreover, "[t]he statute is indifferent to the equities of a dispute and to the values

advanced by the substantive law." *Id.* Instead, the statute is "concerned only with

limiting the abuse of court processes." *Id.* For this reason, a court considering the

propriety of a § 1927 award must focus "on the conduct of the litigation and not on its

merits." *DeBauche v. Trani,* 191 F.3d 499, 511 (4th Cir. 1999).

Federal courts derive their power to sanction any attorney, law firm, or party

from three primary sources: Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. §

1927, and the inherent power of the court. *Chambers v. NASCO, Inc.*, 501 U.S. 32, 41

(1991). Each source sanctions different conduct and a different wrongdoer.

 Rule 11 governs any pleading, written motion, or other paper filed with the

court, and applies equally to attorneys, law firms, and parties. Fed. R. Civ. P. 11(b).

Section 1927 sanctions, on the other hand, cover more misconduct than Rule 11, though

the scope of sanctionable conduct often overlaps. In addition, § 1927 sanctions apply only to attorneys and other persons admitted to try cases in U.S. courts. Danielle Kie Hart, *And the Chill Goes on – Federal Civil Rights Plaintiffs Beware: Rule 11 Vis-a-Vis 28 U.S.C. § 1927 and the Court's Inherent Power*, 37 Loy. L.A. L. Rev. 645, 653 (2004).[4]

"[A]cts which degrade the judicial system, including attempts to deprive the Court of jurisdiction, *fraud*, misleading and lying to the Court," however, are sanctioned through the court's inherent power. *Chambers*, 501 U.S. at 41-42 (emphasis added) (internal quotation omitted). In fact, "the wielding of that inherent power is particularly appropriate when the offending parties have practiced a fraud upon the court." *Id.* at 42.

Defendants' motion seeks sanctions under two of these three legal theories: § 1927 and the Court's inherent power. [ECF No. 124]. They do not invoke Rule 11, though Defendants add another potential theory: Rule 7.3(a).

Regardless of whether a sanctions motion is based on Rule 11, § 1927, or the Court's inherent power, there is tension inherent in the two scenarios underlying an attorney's representation of a client in a lawsuit: an attorney's zealous advocacy (on the

---

[4]     United States District Judge Marcia G. Cooke cited this law review article in *Stonecreek – AAA, LLC v. Wells Fargo Bank, N.A.*, No. 1:12-cv-23850, 2014 WL 12514900, at *1 (S.D. Fla. May 13, 2014). In *Stonecreek*, the Court, after an evidentiary hearing, granted the defendant bank's motion to dismiss and for sanctions and dismissed the case with prejudice. The sanction was awarded because the plaintiff fabricated evidence, a scenario which Judge Cooke deemed to be a fraud upon the Court. Specifically, the Court determined that signatures on two critical documents were forged.

one hand) and efforts to pursue claims even if they are not adequately supported by the facts and law (on the other hand). Courts in this district often acknowledge this tension. *See, e.g., Managed Care Sols., Inc. v. Essent Healthcare, Inc.*, No. 09-60351, 2011 WL 4433570, at *5 n.7 (S.D. Fla. Sept. 21, 2011) ("An attorney should not equate the pursuit of zealous advocacy with the zealous pursuit of the dubious ends of clients by relentlessly advancing whatever marginally, colorable claim that might exist."); *Carlson v. Bosem*, No. 04-61004-CIV, 2007 WL 1496693, at *5 (S.D. Fla. Apr. 9, 2007), *aff'd*, 298 F. App'x 861 (11th Cir. 2008) ("While the law may demand zealous advocacy on the part of an attorney, it cannot condone attorneys demeaning themselves and the judicial process[.]"); *cf. Tobinick v. Novella*, 207 F. Supp. 3d 1332, 1344 (S.D. Fla. 2016) ("The Court is mindful that it should not punish counsel under § 1927 merely for zealous advocacy or for being on the losing side of a case.").

The rules governing sanctions under Rule 11, § 1927, and the Court's inherent power are not identical, but they are straightforward. Because Defendants are not relying on Rule 11, the Undersigned will not discuss it here.

Section 1927's purpose is to deter frivolous litigation and abusive practices by attorneys and to ensure that those who create unnecessary costs bear them. *Roadway Express*, 447 U.S. at 762. To impose sanctions under this statute: (1) the attorney must engage in unreasonable and vexatious conduct; (2) that conduct must multiply the

proceedings; and (3) the amount of the sanction must bear a "financial nexus to the excess proceedings." *Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997).

The standard for imposing sanctions under § 1927 turns on the attorney's objective conduct as compared to how a reasonable attorney would have acted under the circumstances. *Norelus v. Denny's Inc.*, 628 F.3d 1270, 1282 (11th Cir. 2010). Objectively reckless conduct is sufficient to justify sanctions under § 1927 even if the attorney does not act knowingly and malevolently. *Id.* at 1291.

In *Amlong & Amlong, P.A. v. Denny's Inc.*, 500 F.3d 1230 (11th Cir. 2007), the Eleventh Circuit "observed that a district court's authority to issue sanctions for attorney misconduct under § 1927 is either broader than or equally as broad as the district court's authority to issue a sanctions order under its inherent powers." *Id.* at 1239 (citing *Cordoba v. Dillard's, Inc.*, 419 F.3d 1169, 1178 n.6 (11th Cir. 2005)). The Eleventh Circuit further explained,

> If the sanctions were permissible under § 1927, then they were proper, and there is no need to examine whether the sanctions were also permissible under the court's inherent powers. On the other hand, if the sanctions amounted to an abuse of the district court's discretion under § 1927, they necessarily amounted to an abuse of the court's discretion under its inherent powers, because the court's inherent power to issue sanctions for vexatious conduct by attorneys does not reach further than § 1927.

*Id.*

But there is a significant distinction between Rule 11 and § 1927 because the rule provides a 21-day safe harbor period to make the appropriate corrections, while the

statute does not provide a safe harbor period for implementing a remedy. Moreover, courts have noted other differences between the rule and the statute. *See Chambers*, 501 U.S. at 47 (noting that Rule 11 permits attorney's fees "for conduct which merely fails to meet a reasonableness standard," in contrast to a court's inherent powers, which require a higher showing before imposing sanctions); *see also SEC v. Creative Capital Consortium, LLC*, No. 08-81565, 2009 U.S. Dist. LEXIS 116312, at *13 (S.D. Fla. Nov. 24, 2009) (internal citations omitted) (noting that the Court's inherent powers should be exercised "with restraint and discretion").

Because § 1927 mentions "attorneys" and because Defendants seek a fee award against both an individual attorney and his law *firm*, the Court needs to determine whether § 1927 authorizes sanctions against law firms. Although the Court has not found an Eleventh Circuit case directly on point, there is a case that mentions, in passing, that a fee sanction may be awarded against "litigants, counsel and law firms who willfully abuse judicial process by conduct tantamount to bad faith." *Avirgan v. Hull*, 932 F.2d 1572, 1582 (11th Cir. 1991). In that case, the Eleventh Circuit did not directly discuss the issue of whether § 1927 applies to law firms and it does not appear as though any appellant even raised the issue in the first place. *Id.*

Other federal appellate courts have tackled the issue head-on and concluded that the statute does **not** apply to law firms. *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 602 F.3d 742, 750–52 (6th Cir. 2010); *Claiborne v. Wisdom*, 414 F.3d 715, 722–24 (7th Cir. 2005). At

bottom, these appellate courts focused on the use of the term "attorney" in the statute

and the fact that law firms are not "admitted" to "conduct cases" in federal courts. They

also applied the rationale in *Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120

(1989), where the Supreme Court considered the question of whether sanctions were

proper against a law firm under an earlier version of Rule 11. *Id.* at 123. In *Pavelic*, the

Supreme Court construed language permitting sanctions only against the "person who

signed" the offending document and determined that the language could only refer to

the individual signer, not to his partnership. *Id.* at 127.

Based on these authorities and the Court's own assessment of the language in

§ 1927, the Undersigned concludes that the statute either cannot be used to support an

award of fees against Koz Law, P.A. or should not be used for that purpose. *See Sangui*

*Biotech Int'l, Inc. v. Kappes*, 179 F. Supp. 2d 1240, 1244–45 (D. Colo. 2002) (holding that

statute did not apply to law firms and noting that the statute indicates that an attorney

may be required to "satisfy personally" any award, and also emphasizing that the

duties imposed by the statute are not delegable).[5]

---

[5]    In a relatively recent, non-binding ruling on a sanctions motion in a different
FLSA lawsuit, the Undersigned reached the same conclusion about § 1927's
applicability to law firms and a court's inherent power to sanction both an attorney and
the attorney's law firm for bad faith litigation conduct. *Collar v. Abalux*, No. 16-20872,
2018 WL 3328682, at *11-12 (S.D. Fla. July 5, 2018). United States District Judge Joan A.
Lenard denied Plaintiff's counsel's motion to overrule and vacate the sanctions order at
issue. *Collar v. Abalux, Inc.*, 16-20872-CIV, 2018 WL 7364572, at *13 (S.D. Fla. Dec. 17,
2018).

But under its *inherent powers*, a court can sanction both an attorney and the attorney's law firm for bad faith litigation conduct. *Spolter v. Suntrust Bank*, 403 F. App'x 387, 391 (11th Cir. 2010) (affirming award of fees against individual lawyer and his law firm pursuant to the court's inherent powers); *In re Mroz*, 65 F.3d 1567, 1576 (11th Cir. 1995) (internal citation omitted) (stating "there is nothing preventing a federal court from exercising its inherent power to sanction an attorney, a party, or a law firm for their subjective bad faith"); *Maale v. Kirchgessner*, No. 08–80131–CIV, 2011 WL 1458147, at *4 (S.D. Fla. Apr. 15, 2011) (awarding sanctions against attorney and his former law firm, jointly and severally, based upon the Court's inherent power); *Herard v. ATN Rest., Inc.*, No. 07–60269–CIV, 2008 WL 123596, at *5 (S.D. Fla. Jan. 8, 2008) (awarding fees against plaintiff's law firm in FLSA case under inherent power doctrine).

Courts have the inherent power to levy sanctions against litigants for abuse of the judicial system even if procedural rules also exist that sanction the same conduct. *Chambers*, 501 U.S. at 49; *In re Mroz*, 65 F.3d at 1573-75; *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1546 (11th Cir. 1993). One aspect of a court's inherent power is the ability to assess attorney's fees and costs against the client or his attorney, or both, when either has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers*, 501 U.S. at 45-46 (internal quotations omitted).

But "[t]he key to unlocking a court's inherent power is a finding of bad faith." *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) (citing *In re Mroz*, 65 F.3d at 1575).

Although Defendants' motion for fees mentions its reliance on Local Rule 7.3(a) in its introductory paragraph, neither the body of the motion or the memorandum discusses the local rule. Their reply mentions the local rule, but only to respond to, and rebut, Kozolchyk's contention that Defendants violated Local Rule 7.3's meet and confer requirement. It does not rely on the local rule as an affirmative legal ground to support the fees motion against Kozolchyk and his law firm. Therefore, the Undersigned will not analyze the fees motion to see if the local rule provides the necessary legal foundation to generate a viable theory for fees.

Kozolchyk's amended response to the fees motion filed against him and his firm emphasizes that he did not oppose summary judgment on the overtime claim. [ECF No. 97]. He also argues that Defendants would "likely not prevail" had he chosen to oppose the summary judgment motion. [ECF No. 97, p. 6]. According to Kozolchyk, he acted reasonably when not opposing the motion and would have been justified in not mounting an opposition, stating:

> Plaintiff chose not to oppose Defendants' MSJ as to Plaintiff's overtime claim, however, because Plaintiff's counsel believed that *at trial* Plaintiff had less than a 50% probability of prevailing on the motor carrier exemption based on certain documents Defendants produced during discovery and Defendants' anticipated trial testimony. The undersigned has no personal desire to incur the time and expense of litigating a claim that is unlikely to prevail at trial. Thus, Plaintiff followed his counsel's advice and authorized Plaintiff's counsel not continue incurring time litigating Plaintiff's overtime claim after Defendants produced discovery that rendered Plaintiff's overtime claim less likely to prevail at trial. Plaintiff authorized Plaintiff's counsel to settle Plaintiff's claims on March 12, 2018 solely for the value of Plaintiff's

minimum wage claim rather than incurring the time and expense of continuing to litigate the overtime claim.

[ECF No. 97, p. 6].

The Undersigned is not persuaded by Kozolchyk's argument. He does not dispute that the overtime claim was not unconditionally abandoned until after the filing of Defendants' summary judgment motion. He says he did not have any idea that FUHH was engaged in interstate transportation until his January 19, 2018 receipt of a letter from a FUHH client detailing same, and that he discontinued litigating the overtime claim at that time.

But Kozolchyk should have known pre-suit and clearly did know post-suit, before January 2018, that FUHH was an international carrier. Indeed, documents produced show FUHH was involved in transports to Grand Cayman, Puerto Rico, Panama, and Ecuador. [*See* ECF No. 102-3]. Nevertheless, even after receipt of these documents in October 2017 through January 19, 2018, and after Kozolchyk determined the overtime claim was not worth pursuing, the claim still remained in litigation, and Plaintiff's counsel continued to "hold 'em"[6] until the claim was officially abandoned on March 26, 2018.

---

[6]      [*See* ECF No. 97, p. 4 (citing Kenny Rogers, *The Gambler* (United Artists 1978) ("[Y]ou've got to know when to hold 'em, know when to fold 'em, know when to walk away, know when to run.")].

### III.     Conclusion

Rather than relying again on the warlord Sun Tzu, the Undersigned will opt instead for another war-related quote from John Adams (1735 – 1826): "Great is the guilt of an unnecessary war."

The litigation war Kozolchyk started was unnecessary, frustrating, and expensive. The Undersigned has no idea whether he feels guilty (or badly) about his tactics here, but his memoranda suggests that he does not. Kozolchyk said he "strongly disagrees" with *Kobi Karp* and he contends that "the vast majority of time" he expended has been "defending against Defendants' tenacious scorched-earth litigation and not the overtime claim." [ECF No. 97, pp. 22, 24].

The same grounds which led the Undersigned to conclude that an appropriate attorney's fee for Plaintiff (actually, for Kozolchyk) is no fee are equally applicable to Defendants' fees motion. Kozolchyk did not engage in sufficient due diligence. He was intentionally difficult. He prolonged the lawsuit. He pursued a meritless overtime claim. He pursued a minimum wage claim even after Defendants unconditionally tendered a check within seven weeks of the filing of the lawsuit. He refused to consider any settlement offer unless it included a general release of all claims against his client, even claims beyond the scope of those at issue in this lawsuit.

At bottom, Kozolchyk engaged in myriad tactics which evidence an apparent focused strategy of churning the file needlessly in order to increase his fees. This is

precisely the type of bad faith misconduct which justifies attorney's fees under both § 1927 and the Court's inherent power.

Defendants seek a minimum of approximately $60,500 but also seek the additional fees they incurred in litigating the fees issues raised in their affirmative motion for fees. [ECF Nos. 89; 102, p. 10]. The Eleventh Circuit authorizes this type of supplemental "fees-on-fees" request. *Norelus*, 628 F.3d at 1301.

Thus, subject to an entry-by-entry reduction for inefficient attorney time (and the Undersigned is not suggesting that defense counsel did not use reasonable billing judgment), the Undersigned could recommend a $60,500 fees award, with leave for Defendants to seek additional fees for fees, against Kozolchyk and his law firm.

I will not make that recommendation, however.

Under the circumstances, imposing that type of sanction would be unduly harsh. Kozolchyk has already received significant, negative consequences for his unacceptable, bad faith behavior -- the denial of all attorney's fees and costs.  That lesson cost him and his firm more than $36,000 in attorney's fees, which was requested in Plaintiff's fees motion. [ECF No. 86].

Moreover, parsing Defendants' bills to pinpoint which specific entry concerned overtime or minimum wage or the motion to prevent solicitation would require a significant and focused review of myriad time entries, cross-referenced to motions and memoranda.

Framed by these dynamics and factors, the Undersigned, using the discretion available in these situations, will instead recommend a reduction of Defendants' fees request by 50% and also recommend that Defendants not be permitted to seek additional fees for the litigation regarding their fees request.

Therefore, the Undersigned **respectfully recommends** that Judge Cooke **grant** Defendants' fees motion and enter a sanctions award against Kozolchyk and his law firm in the amount of **$30,265.33**.[7] And, as outlined above, the Undersigned also **respectfully recommends** that Judge Cooke **deny** Plaintiff's motion for fees and costs.

## IV.   Objections

The parties will have 14 days from the date of being served with a copy of this Report and Recommendations within which to file written objections, if any, with the District Judge. Each party may file a response to the other party's objection within 14 days of the objection. Failure to timely file objections shall bar the parties from a *de novo* determination by the District Judge of an issue covered in the Report and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report except upon grounds of plain error if necessary in the interest of justice.

---

[7]   The Undersigned has reviewed the resumes of Defendants' attorneys [ECF No. 89-12] and concludes that the hourly billing rates (ranging from $405 for the partner to $270 for a five-year associate) are reasonable for the South Florida legal community in FLSA cases. Partner Kelly Kolb, for example, has been practicing law since 1986 and has been listed in *The Best Lawyers In America* in 2017, 2018, and 2019 for employment law.

*See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885

F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**DONE AND ORDERED** in Chambers at Miami, Florida, on June 5, 2019.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Marcia G. Cooke
All counsel of record